IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

_____
                                       )
In re:                                 )    Chapter 11 Cases
                                       )    Case No. 08-13127 (KJC)
PFF BANCORP, INC., et al.,[1]          )
                                       )    Jointly Administered
                                       )
            Debtors.                   )
_____ )

Objection Deadline: Requested November 17, 2010 at 4:00 p.m. EST
Hearing Date: Requested November 22, 2010 at 4:30 p.m. EST

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PFF BANCORP, INC., ET AL., FOR ENTRY OF AN ORDER APPROVING STIPULATION FOR THE COMMITTEE'S STANDING TO BRING CERTAIN CLAIMS ON BEHALF OF THE DEBTORS' ESTATES**

The Official Committee of Unsecured Creditors (the "Committee") of PFF Bancorp, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors", together with the Committee, each a "Party" and, collectively, the "Parties"), by and through its undersigned counsel, hereby files this motion (this "Motion") for entry of an order substantially in the form annexed hereto (the "Proposed Order") approving the *Stipulation By And Between the Debtors and the Committee, Granting the Committee Standing To Pursue Certain Estate Causes of Action* (the "Stipulation," a true and correct copy of which is attached to the Proposed Order as **Exhibit 1**) and granting the Committee leave, standing and authority to prosecute and, if appropriate, settle certain claims on behalf of the Debtor's estates. The Stipulation authorizes the Committee to investigate and pursue certain potential claims and/or causes of action against each of: (i) the recipients of

---

[1] The Debtors are the following 5 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PFF Bancorp, Inc. a Delaware corporation (1623) ("Bancorp"), Glencrest Investment Advisors, Inc., a Delaware corporation (1405), Diversified Builder Services, Inc., a California corporation (4416), PFF Real Estate Services, Inc., a California corporation (0728) and Glencrest Insurance Services, Inc., a California corporation (3118). The address of each of the Debtors is 9377 Milliken Avenue, Rancho Cucamonga, California 91730.

transfers from the Debtors which may be avoidable under 11 U.S.C. §§ 544, 547, 548 and 549 other than Paul Hastings Janofsky & Walker LLP ("Paul Hastings") or the Debtors' current officer, directors or independent contractor (the "Avoidance Defendants"); and (ii) the Debtors' former auditor, KPMG LLP ("KPMG", together with the Avoidance Defendants, each a "Defendant" and, collectively the "Defendants") for the benefit of the Debtors' estates. In support of this Motion, the Committee respectfully submits as follows:

## PRELIMINARY STATEMENT

1. By this Motion, the Committee seeks entry of an order approving the Stipulation and authorizing the Committee to investigate and, in its discretion, to pursue certain claims (the "Claims") against each of the Defendants. The general nature of the potential claims against KPMG sound in tort and/or contract, relating to KPMG's role in auditing certain of Debtors' and their affiliates' financial statements in the years prior to the bankruptcy filing of Bancorp, and possibly providing other services to the Debtors as well.[2] The nature of the Claims against the Avoidance Defendants, in general, are the recovery of avoidable transfers of the Debtors under Bankruptcy Code sections 544, 547, 548 and 549.

2. The Committee has obtained the Debtors' consent to investigate and/or pursue the Claims as more fully set forth in the Stipulation.

3. With respect to the Claims against the Avoidance Defendants, the Debtors have requested that the Committee investigate and determine whether to bring such Claims for the benefit of the estates. While the Debtors determined not to bring themselves Claims against KPMG, the Debtors have consented to the Committee investigating and/or bringing the Claims against both the

---

[2] The Committee is currently attempting to negotiate a one-year tolling of the applicable statutes of limitation that may apply to Claims against KPMG (a "Tolling Agreement"), although no such agreement has been entered into as of the date hereof.

Avoidance Defendants and KPMG subject to an initial limit (the "Initial Fee Cap") of two hundred fifty thousand dollars ($250,000) with respect to the fees and costs payable by the Debtors to the Committee's counsel in connection with the prosecution of the Claims, subject to later enlargement upon the agreement of the Parties or by order of the Court.

4. As discussed more fully below, the legal requirements for granting the Committee derivative standing to pursue the Claims have been satisfied. Because the Debtors have consented to the transfer of standing to investigate and/or pursue the Claims to the Committee, and because those determinations will play an important role in the administration of the Debtors' estates, the Motion should be granted.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105(a), 1103(c), and 1109(b) of the Bankruptcy Code.

## BACKGROUND

A. **The Debtors**

6. The Debtors are comprised of a former non-diversified unitary savings and loan holding company within the meaning of the Home Owners' Loan Act and are each incorporated in the State of Delaware. Prior to the Petition Date (defined below), Debtor Bancorp was the parent and holding company for PFF Bank and Trust ("PFF Bank"), a federally chartered savings institution, and subsidiaries thereof, including Pomona Financial Services, Inc. and Diversified Services, Inc. Bancorp is also the direct or indirect parent of non-banking subsidiaries, including its

3
131350.01600/21906886v.4

affiliated Debtors and debtors-in-possession: Diversified Builder Services, Inc.; Glencrest Investment Advisors, Inc.; Glencrest Insurance Services, Inc.; and PFF Real Estate Services, Inc.

7. Prior to November 21, 2008, PFF Bank was a full-service community bank that offered a wide range of financial products and services, including mortgages, consumer, and small business loans, through 38 full-service banking branch offices throughout Southern California. Through various of the other Debtor subsidiaries, Bancorp also provided wealth management services to customers, and financing and consulting services to builders and land developers.

8. On November 21, 2008, the Office of Thrift Supervision closed PFF Bank and appointed the FDIC as Receiver (the "Receivership"). Subsequent to the closure, a subsidiary of U.S. Bancorp acquired all of the deposit accounts and all of the loans of PFF Bank from the FDIC.

9. Currently, Debtor Bancorp owns and operates each of its affiliated co-debtors and debtors-in-possession solely for the purpose of liquidating their estates for the benefit of creditors.

10. KPMG, which had an ongoing relationship with Bancorp, PFF Bank, and other affiliates, audited Bancorp's financial statements for the fiscal years ending March 31, 2006, March 31, 2007, and March 31, 2008, and provided other audit-related services for each of those years as well. Additionally, KPMG was retained to provide similar services for the 2008-2009 fiscal year. Moreover, KPMG may also have been retained by the Debtors from 2005 through 2008 to provide other accounting, tax, and consulting services.

B. **The Bankruptcy Cases**

11. On December 5, 2008, (the "Petition Date") the 2009 Debtors each commenced chapter 11 cases in this Court by filing voluntary petitions for relief under the Bankruptcy Code. This Court granted joint administration of the 2009 Debtors' chapter 11 cases by an order dated December 10, 2008 [Dkt. No. 13].

12. On December 17, 2008, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Delaware appointed the Committee.[3]

13. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

14. On May 21, 2009, the Debtors filed their respective Schedules and Statements of Financial Affairs [Dkt. Nos. 222 through 230] (the "SOFAs and Schedules").

15. Most recently, on the date hereof, the Debtors consented to the Committee's standing to investigate and/or bring the Claims, subject to Initial Fee Cap, as more fully set forth on the Stipulation.

C. **The Claims**

16. With respect to the Claims against the Avoidance Defendants, the SOFAs and Schedules list certain transfers within 90 days of the Petition Date and certain transfers may have occurred after the Petition Date.[4]

17. The Committee has circulated letters to certain of the Avoidance Defendants, demanding either: (i) repayment of the amounts paid by the Debtors during the 90 days prior to and, in certain cases, the time following, the Petition Date; or, in the alternative (ii) requesting that each such Avoidance Defendant list all applicable defenses to such payment. At the same time, the

---

[3] The Committee originally consisted of the following three members: (i) Wilmington Trust Company; (ii) Developers Surety and Indemnity Company; and (iii) FBOP Corporation. FBOP Corporation resigned from the Committee as of June 16, 2010.

[4] The Debtors' Schedules and SOFAs include an aggregate of $1,299,178 of payments to the Debtors' counsel, Paul Hastings, within the 90 days prior to the Petition Date. At the outset of the case, the U.S. Trustee's office examined these transfers and was comfortable but requested that the Committee advise if it intended to sue Paul Hastings for these transfers. The Committee reviewed the transfers and advised the U.S. Trustee that, while certain of the Debtors' payments to Paul Hastings were arguably preferential, the Committee did not intend to pursue their recovery because, given a cost/benefit analysis, the Committee desired to have Paul Hasting remain as Debtors' counsel due to Paul Hasting's institutional knowledge and familiarity with the Debtors' business operations (especially in light of the fact that the Debtors did not have possession of their own books and records as a result of the Receivership of PFF Bank). This decision is not binding on any Chapter 7 Trustee.

Committee is performing additional analysis to weigh the costs and benefits of bringing any of the Claims against the Avoidance Defendants.

18. As it pertains to potential causes of action against KPMG, in determining whether to bring claims against KPMG, the Committee has been reviewing a variety of information sources, including the Debtors' books and records (copies of which have been made available to the Committee), documents produced thus far by KPMG in connection with these bankruptcy proceedings, and publicly-available information. Significantly, the Committee has also attempted to enter into a Tolling Agreement with KPMG.

## RELIEF REQUESTED

19. The Committee hereby requests that this Court grant the Committee leave, standing, and authority to prosecute the Claims, consistent with the terms set forth in the Stipulation.

## BASIS FOR RELIEF

A. **Standard for Derivative Standing**

20. Although the Bankruptcy Code does not expressly authorize a creditors' committee to initiate proceedings to pursue causes of action typically brought by the trustee or the debtor in possession, the Bankruptcy Code established creditors' committees for the express purpose of protecting the rights of their constituents and similarly situated creditors. *See* H.R. Rep. No. 95-595, at 91 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6053. In furtherance of this purpose, Bankruptcy Code section 1103(c), which enumerates the statutory functions of a creditors' committee, authorizes creditors' committees to "perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(c)(5). To that end, Bankruptcy Code section 1109(b) provides, in pertinent part, that:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an

6

> equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). This general right to be heard would be rendered meaningless with respect to creditors' committees unless such committees are also given the right to act, on behalf of the estate, if a debtor in possession or trustee, who is explicitly granted the right to act, unjustifiably fails to act. *See In re iPCS, Inc.*, 297 B.R. 283, 290 (Bankr. N.D. Ga. 2003) ("[I]f a debtor has a cognizable claim, but refuses to pursue that claim, an important objective of the Code [the recovery and collection of estate property] would be impeded if the bankruptcy court has no power to authorize another party to proceed on behalf of the estate in the debtor's stead."); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568-69 (3rd Cir. 2003) (en banc) (holding Bankruptcy Code sections 1101(c)(5) and 1109(b) implicitly authorize a court to grant a creditors' committee derivative standing to prosecute an avoidance action when the trustee or debtor in possession cannot or will not do so, or when the debtor in possession is unlikely to act); *In re Joyanna Holitogs, Inc.*, 21 B.R. 323, 326 (Bankr. S.D.N.Y. 1982) (holding that the general right to be heard would be an empty grant unless those who have such a right are also given the right to act when the debtors refuse to do so).

21. The Third Circuit has recognized that a creditors' committee may have standing to prosecute and settle claims derivatively on behalf of a debtor's estate. *See Cybergenics*, 330 F.3d at 566 ("the most natural reading of the [Bankruptcy] Code is that Congress recognized and approved of derivative standing for creditors' committees."). This is especially true when a debtor has consented to a creditor's standing. *See Commodore Int'l v. Gould (In Re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001) ("a creditors' committee may sue on behalf of the debtors, with the

7

approval and supervision of a bankruptcy court…where the trustee or the debtor in possession consents.").

22. In *Commodore*, the leading case on this issue, the Second Circuit held that "a debtor in possession may stipulate to representation by an unsecured creditors' committee 'so long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial.'" *Id.* at 100 (internal citations omitted). The *Commodore* court stated that "a creditors' committee may acquire standing to pursue the debtor's claims if: "(1) the committee has the consent of the debtor in possession or trustee; and (2) the court finds that suit by the committee is: (a) in the best interest of the bankruptcy estate; and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *Id.* Importantly, the Third Circuit has adopted *Commodore* and the standard it set out. *See Cybergenics*, 330 F.3d at 566-67.

23. Here, those standards are met. As set forth and detailed further in the Stipulation, the Debtors have consented to the transfer of standing to investigate and/or pursue the Claims to the Committee, subject to the Initial Fee Cap. The investigation and determinations the Committee shall make as to the Claims – whether to bring any or all of them, whether to refrain from doing so, and any decisions as to litigation and/or settlement strategy – are all necessary tasks to the winding up of the Debtors' estates and the fair and efficient resolution of these bankruptcy proceedings. The transfer of standing as outlined in the Stipulation will hasten the resolution of these proceedings or, in the alternative, could provide additional sources of funds to the Debtors' estates.

B. **Additional Considerations**

24. Granting the Committee standing to prosecute the Claims is also salient to the Committee's proper discharge of its fiduciary duties. These duties include "perform[ing] such … services as are in the interest of those represented." 11 U.S.C. § 1103(c)(5). As the United States

8

Court of Appeals for the First Circuit has previously explained, a court should be flexible in interpreting these duties in order to allow a committee to "pursu[e] whatever lawful course best serves the interests of the class of creditors represented." *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1315-16 (1st Cir. 1993).

25. The Committee is the appropriate party to investigate and/or bring the Claims because its very purpose is to defend the interest of the estates and to ensure that the assets of the estates are rationally maximized. *See, e.g., In re Nationwide Sports Distrib., Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) ("the purpose of such [unsecured creditors'] committees is to represent the interests of unsecured creditors and to strive to maximize the bankruptcy dividend paid to that class of creditors.").

26. As the Debtors have indicated that they will not pursue the Claims, the Committee's right to investigate and/or bring the Claims should be expressly recognized.

## **RESERVATION OF RIGHTS**

27. The Committee reserves its right to seek authority to commence and prosecute other claims and/or causes of action against the Defendants, and other parties, on behalf of the Debtors' estates.

## **NOTICE**

28. This Motion will be served on: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors and their counsel; (iii) the Defendants; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002.

**NO PRIOR REQUEST**

29. No prior application for the relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases.

**WHEREFORE**, the Committee requests that this Court enter an order, substantially in the form attached hereto, (i) granting the Committee leave, standing and authority to commence and prosecute the Claims to the extent the Committee determines to bring any of the Claims, (ii) granting the Committee authority to compromise and settle the Claims, subject to Court approval, and (iii) providing the Committee such other and further relief as this Court may deem just, proper and equitable.

Dated: November 10, 2010

**BLANK ROME LLP**

 */s/ David W. Carickhoff*
Regina Stango Kelbon (DE 5554)
David W. Carickhoff (DE 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

Jeremy A. Rist
Josef W. Mintz
One Logan Square
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Counsel for the Committee*